Samuels,J.
This cause is brought here- \>j supersedeas to a- judgment of the Circuit court of Monroe county, rendered upon a special verdict in an action of ejectment, wherein, the defendant was here, plaintiff, and the plaintiffs here were defendants..
The finding of' the jury shows this, case: John Thompson, was seized'in fee of the- land, in* controversy; and departed this life in June 1823. He left seven children, and several grand children the issue of two sons who had diéd in the life time of their father; the lessors of the plaintiff are some of the children and grand children of the deceased.claiming as heirs, *507 and others claiming by purchase from others of ¡the heirs.
The defendants below also claim title as derived from John Thompson deceased. It- appears that after the death of the ancestor in 'June '1823, and before August 29th of that year, Samuel Thompson, .one-of his sons and heirs at law, «entered upon the land in controversy, claiming that his father had left a will wherein he devised the land in controversy to said Samuel for life, remainder to said Samuel’s wife for life, remainder in fee to John Thompson, and William ThompsQn, the sons of said Samuel. This alleged will was not found after John Thompson’s death. Samuel Thompson, however, having taken -possession of the land at some time after his father’s death in June 1823, and before the 29th of August of that-year, on the day last named instituted a suit in- chancery in the District court of chancery holden at Lewisburg, alleging the due making of the will devising the land to the complainant, his wife and-sons as above stated; that the will was in force at testator’s death.; that it could not be found; and praying that'the .whole will, or so much of it as devised the dand to ■ complainant, his wife and sons, might be established. To .this bill the heirs at law of John Thompson were made defendants, and served with process to answer. Under this color .ar claim of ;title Samuel Thompson took ;and held «the exclusive possession of the land during his life. After his death the parties claiming under .the will, successively took and held the land for their own use, to the exclusion of John Thompson’s other heirs at law. The title thus claimed has been transmitted by intermediate alienations, until equal moieties of the land vested in the parties Caperton and Tiffany respectively, who are the plaintiffs here, and who were in possession at the time of bringing this suit, using and enjoying the property as their own.
*508 The entry- and possession of Samuel Thompson mus^ under the circumstances,- be held to have been adverse to the other heirs at Itw of his father John Thompson; A will, although not admitted to probat, is a valid will of land. Bagwell v. Elliott, 2 Rand. 190: And the record shows that Samuel Thompson reasorL insist on his claim- under the alleged will. The exclusive use and enjoyment of the property in the hands of the several and successive holders, accompanied with a denial of all right in the- parties now claiming as coparceners, from 1823 to 1848, when, this suit was brought, is such an adverse possession as is. protected by the statute of limitations. See Shanks v. Lancaster, 5 Gratt. 110; Purcell v. Wilson, 4 Gratt. 16.
The defendant must be barred by the statute, unless it. can be shown that his lessors or some of them are exempt from, its operation. The counsel1 for the defendants here seek to withdraw all the lessors of the plaintiff' from, the bar of the statute, for several reasons-:- As that the entry- and possession- by Samuel Thompson, one of the coparceners, must be regarded as the- entry and possession of all the coparceners; and;, therefore, the statute did not run. Conceding that the entry and possession by one coparcener enures to ■ the benefit of all in the absence of proof to the contrary, yet when it appears that the coparcener entering and taking possession, claimed the property as his-own under color of title; that he took the profits to i his own exclusive use, and denied the title of the other coparceners, of all which they had notice; the party so taking and holding is regarded as having dis-seized his coparceners. See Clymor’s lessee v. Dawkins, 3 How. S. C. R. 674; Ricard v. Williams, 7 Wheat. R. 59; McClung v. Ross, 5 Wheat. R. 116; Purcell v. Wilson, 4 Gratt. 16.
Another reason for which the counsel sought to-withdraw all the plaintiff’s lfessors from the operation. *509 of the statute, is the fact that Samuel Thompson, after his entry, filed a bill in chancery against the other heirs at law seeking to establish the alleged will of their common ancestor; that this bill was pending until the year 1837, when it was dismissed for a failure to give security for costs, which complainants had been required to give. The answer is obvious, that the statute commenced running the day Samuel Thompson disseized the other heirs; and the course of the statute would not be arrested by anything occurring subsequently. The further answer is equally obvious, that this cause was decided in a court of common law jurisdiction, which court necessarily decided it upon its own rules and principles, without reference to the principles governing chancery courts. Without doubt, in the absence of any injunction restraining the lessors of the plaintiff from making an entry or from bringing suit, the law court must allow full force to the statute. The chancery suit was not brought for the purpose of acquiring title; that, as was alleged, had been acquired by the will and the death of the testator : It was brought to establish the evidence of the title. It would be strange if a party in possession of property, claiming it under color of title, should lose the protection of the statute, by making an ineffectual effort to procure evidence to sustain his title.
The defendant here further sought to obviate the effect of the statute by the suit for partition brought in 1844, in which suit an order was made requiring complainants to establish their title by suit at law, under which order this suit was brought. In the view I take of the subject, this suit for partition is wholly without the effect ascribed to it, as, if the statute applied at' all, it had run its course before the suit was brought: The adverse entry was made» before the 29th of August 1823 j the suit for partition was commenced 21st of March 1844. If the complainants in *510 the suit for partition had alleged and proved any equitable reason to repel the statute, the chancery court might have given effect to such reason by an appropriate order when directing the suit to be brought for trial of title. No reason of this nature is shown, no such order of the court was made; and the statute is thus left to have the operation which a common law court ascribes to it.
The counsel for the defendants here, if they may not exempt all the lessors from the bar of the statute, yet seek to exempt some of them by bringing them within the proviso in favor of femes covert and infants.
At the time ef John Thompson’s death, some of his heirs, that is to say, Margaret the wife of Isaac Cole, Elizabeth the wife of Joseph Canterbury, Isabélla the wife of Willis Ballard, and Jane the wife of Samuel Gregory, were femes covert. The first named three of these femes-still survive, and have continually remained covert since the death of John Thompson; and they unite withrtheir husbands in "this suit: Jane-Gregory •lived until 1832, when she died, -leaving issue -and leaving her husband Samuel Gregory surviving; he died in 1-833. The issue of Jane Gregory are lessors of the plaintiff in this suit. The title-ef Canterbury and wife, who unite as lessors of the plaintiff, was divested by the decree of a court of competent jurisdiction, and -vested in Nancy Thompson for life; remainder in fee to her sons John and William, under whom the plaintiffs here claim; no recovery, therefore, ean-be had under this title.
The titles of Cole and wife and Ballard and wife stand upon a different footing from that of Jane Gregory’s heirs; and must be separately considered. That title descended from John Thompson to the femes when they were covert-baron, in which condition they have hitherto continually remained. Samuel Thompson made his adverse entry upon -the land ^alleged to *511 have descended, whereof the husbands and wives were jointly seized in right of the wives, thereby putting these parties to their right of entry, and giving them cause of action to recover possession.
The question whether the statute is a bar under such circumstances, has never before occurred in this court; it must, therefore, be decided upon the terms of the statute itself, applied to estates of the nature of this, and claimed, by parties in. their, condition. We must look to the decisions of other courts upon the question. ^
The statute giving the rule is> found in Sess. Acts 1837, p. 11, § 10. The body of the enactment includes all rights of entry, by whomsoever held; and creates a bar in seven years. The proviso declares, “ that if any person or persons entitled to such writ or writs, to such right or title of entry,, as aforesaid, shall be or were under the age of twenty-one years, feme covert, non compos mentis or imprisoned, at the time such right or title accrued or came to them, every such person, and his or her heirs, shall and may, notwithstanding the said seven years are or shall be expired, bring and maintain his,- or her action, or make his or her entry, within three years after such disabilities removed, or the death, of the person so. disabled, and not afterwards.”
The body of the statute gives- seven years to every party having a right of entry in which to assert the right, and interposes a bar after that time;. the proviso gives a further time of three years to parties under disability: this three years to be computed from the removal of the disability. The period, if any, between the end of the seven years and the beginning of the three years, is not, in terms, withdrawn from the operation of the statute.
In regard to an infant, and a person non compos mentis, it has been decided that the right of action exists *512 continually from its accrual until the end of the time allowed after the disability removed: that suit may be by such parties after the end of the time prescribed as a bar, and before the beginning of the time secured by the proviso. However this may be in reL J gard to such persons, a feme .covert stands on a different, gTOim(p She and her husband are jointly seized in her right; but the husband has also certain interests in the property, and caj>acity to dispose of such interests, without the concurrence of the wife, and against her consent. He may invest another with seizin by conveying a freehold estate for the joint lives of himself and wife; and if issue be born, (Cole and wife had issue,) the husband may convey the property for his own life; his estate by the curtesy intervening before that of the heirs of the wife. The husband may moreover subject .the freehold estate for the joint lives of himself and wife, or for his own life in case issue be born, to ¡the payment of his debts. See Clancy on the Rights of Married Women 161; Bac. Abr. Baron & Feme C. 1; Watson, v. Watson, 10 Conn. R. 75, 91, Judge Church’s opinion. If the husband may do all this by direct conveyance; if he may thereby deprive himself and wife of a right of entry for their joint lives, I perceive no reason why he may not allow his and her right of entry to pass away by operation of law. This construction of the statute is sustained by Littleton, § 403, and the commentary thereon, 3 Thos. Coke Litt. p. 47; Moore v. Jackson, 4 Wend. R. 58.
I am of opinion that no recovery can be had in this action under the -title of Cole a,nd wife, or that of Ballard and wife.
The sixth count in the declaration is upon the demise of Jane Gregory’s heirs; and upon this count only judgment was rendered for the plaintiff by the Circuit court. ” As already said, Jane Gregory’s title descended to her heirs, -and is somewhat ¡different from *513 those of Cole and wife and Ballard and wife. Mrs. Gregory was a feme covert at the time her right of entry accrued in 1823 ; and so continued until her death in 1832. She left her husband surviving, who died in 1833. She also left children her heirs at law, who were infants under the age of twenty-one years at the time of her death, to whom descended her right of entry with capacity to make the entry after the death of the husband. This entry was not made nor suit brought by the heirs within three years after their capacity to do either had accrued to them, nor within the further time allowed by the act of 1837. The question is thus presented, Whether their right is protected by the proviso ?
It is insisted by the counsel for the defendant in error, that the possession of Samuel Thompson and of those holding in succession after him, was not adverse to Jane Gregory at any time during her life; and as a consequence, she was not under the necessity of relying on the proviso to preserve her rights: that the possession became adverse after her death, and that her heirs are the parties to whom the right of entry on the adverse possession for the first time accrued. This position of the counsel, to be of any avail, must be true in all its parts; for if the right of entry accrued to Jane Gregory in her life time, her coverture must be relied on to save the right of entry in her person : her heirs in that case can claim only the benefit secured to them as her heirs. ■ That the possession of Samuel Thompson and others holding after him, was adverse to John Thompson’s other heirs, has, I conceive, been fully shown. Jane Gregory’s right of entry would then be preserved only by her coverture; and her heirs can recover only by showing an entry, or suit brought within the time allowed to them for these purposes. Is this the full period allowed to parties who are infants “ at the time such right or title *514 accrued or came to them,” or is it only the three years allowed to the heirs of one whose right of entry has once already been protected ? I think the latter. Jane Gregory’s right of entry, whatever it was, descended at her death to her heirs: her right up to that time . was protected by the proviso : her heirs, however, m express terms, are bound, unless they enter within three years-, no disability of theirs being protected. Yet this plain language is to be set at naught, if the counsel be right; the heirs are not to be regarded as heirs succeeding to a limited right of entry, but as infants “ at the time such right or title accrued or came to them.” We must take a new departure in the computation of time; we must hold that the heirs do not take the right of entry held by the ancestor, but a renewed and prolonged right, to be transmitted, perchance, to- other infant heirs, with a renewed right engrafted- thereon and still further prolonged: and thus onwards indefinitely. Such a construction I regard as at war alike with the letter and purpose of a statute of limitations. Our act of assembly is substantially copied from the statute 21 James 1, ch. 16. The English courts hold that an heir under disability, acquiring a right of entry by descent from an ancestor also under disability, cannot claim the whole time allowed by the statute to a party in whom the right originally vested to make the entry, but that the heir may only claim the time secured by the proviso to a party taking derivatively by descent.
An English court acting on established principles, in applying a statute like ours in the case of Jane Gregory’s heirs, would hold that the heirs, notwithstanding their disability of infancy, could enter only within three years after their right of entry accrued. See Doe v. Jesson, 6 East’s R. 80.
Justice McLean, in delivering the opinion of the Supreme court of the United States in Mercer's lessee v. *515 Selden, 1 How. S. C. R. at page 55, in regard to the right of Mrs. Swaim’s infant heirs who were alleged to have acquired a right of entry from their mother, a feme covert, says, “ They were bound, without regard to their infancy or other disabilities, to bring their action in ten years from the decease of their ancestor.” This was the construction placed upon the statute of limitations of Virginia existing prior to the act of 1837, and applying at that time throughout the whole state. The act of 1837 prescribes different times of limitation for lands lying west of the Alleghany mountains. The old and' the new statutes, however, are identical in all particulars except time, and the territory to which they apply. Thus the decision of the case is directly upon the question in which Jane Gregory’s heirs are concerned; and is adverse to their pretensions. See also Floyd's heirs v. Johnson et ail. 2 Litt. R. 109, in which the same question is decided in the same way; Moore v. Jackson, 4 Wend. R. 58.
Following these decisions as giving the true meaning of the statute, as well according to its letter, as to its obvious spirit and policy, I am of opinion no recovery can be had under the title asserted by Jane Gregory’s heirs.
Having thus passed upon the title of each one of 'John Thompson’s heirs, in whose behalf an attempt could be made to exempt them from the statute of limitations, on the facts found in the verdict, and finding the attempt in regard to each without foundation in law, I am of opinion to reverse the judgment of the Circuit court, and to render a judgment for the plaintiffs in error.
Moncure and Lee, Js. concurred in the opinion of Samuels, J.
Judgment reversed.